262 So.2d 810 (1972)
Joseph P. FASULLO et al.
v.
The AMERICAN DRUGGISTS' INSURANCE CO., et al.
No. 4938.
Court of Appeal of Louisiana, Fourth Circuit.
May 2, 1972.
Rehearing Denied June 7, 1972.
*811 Frank J. Peragine, of Deutsch, Kerrigan & Stiles, New Orleans, for defendant, plaintiff in reconvention, third-party plaintiff-appellant.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Paul B. Deal, New Orleans, for defendants and third-party defendants-appellees.
Before REGAN, GULOTTA and BAILES, JJ.
REGAN, Judge.
The plaintiffs, Joseph Fasullo and J. P. Wholesale Drug Co., Inc., filed this suit against the defendants, the American Druggists' Insurance Company, Western General Insurance Company, and Zurich Insurance Company, endeavoring to recover $7,000.00, which amount they allege is due from the defendants in conformity with the provisions of three separate fire insurance policies covering a loss incurred as the result of a fire which occurred on October 4, 1969, in the plaintiff's premises located in 1328 Fourth Street, Westwego, Louisiana.
Western General Insurance Company and Zurich Insurance Company answered the plaintiff's suit and asserted therein that they had paid the full amount for which they were liable under their respective policies.
American Druggists' Insurance Company answered and claimed that it had overpaid its pro rata share of liability under its policy; it then filed a reconventional demand against the plaintiffs to recover this overpayment; it finally filed third party petitions against Western and Zurich in an endeavor to recover from them any amount in excess of the sum for which it contended was its actual liability. Following a trial on the merits, the lower court rendered judgment in favor of the plaintiff and against American Druggists for the full sum of $7000. Judgment was also rendered in favor of the plaintiff dismissing American Druggists' reconventional demand and in favor of Western and Zurich dismissing plaintiff's original suit and American Druggists' third party petition against them.
From that judgment, only American Druggists' Insurance Company has prosecuted this appeal.
It was stipulated in the lower court, and counsel for American Druggists' joined in this stipulation, that the issue at the trial hereof was not whether the plaintiffs were entitled to recover the sum of $7000 but only from whom this amount should be recovered.
The facts involved are not in dispute. At the location of the insured's property Fasullo operated a retail drugstore as an individual proprietorship, and the rear of the same building was occupied by J. P. Wholesale Drug Co., Inc., which was also owned by Fasullo and operated as a warehouse for the storage of drugs to be sold at wholesale. While housed in the same building, the two were separate and distinct businesses and legal entities. Fasullo's retail loss as a result of the fire was $103,912 and the loss incurred by J. P. Wholesale Drug Co., Inc., was $41,328.
American Druggists' policy insured only that portion of the building designated as the retail drugstore and the personal property therein up to a limit of $92,000.00. Both Western's policy and Zurich's policy, each in the face amount of $32,500.00, covered the entire building, including the personal property owned both by Fasullo and by J. P. Wholesale Drug Co., Inc. An insurance adjuster originally acting on behalf of all three defendants computed the loss and prorated it among the three companies *812 predicated upon the hypothesis that American Druggists' should pay the full limit of its policy to cover the loss on the retail drug operation, since its policy specifically covered that portion of the loss, and the remainder of the retail loss plus the entire loss in the wholesale operation owned by J. P. Wholesale Drug Co., Inc., should be paid equally by Western and Zurich. American Druggists' took issue with this method of computation, paid only $85,000.00, and, to reiterate, sought to recover what it termed an overpayment of $1,922.00, which it claims it made pursuant to a mistake of law. When efforts to reconcile the proration of the $7,000.00 among the three companies failed, the plaintiffs instituted this suit to recover the remaining $7,000.00 owed to it under one or all of the policies.
It is conceded by all of the defendants that there is no statutory or jurisprudential rule in Louisiana for determining the method of prorating losses between insurance companies under the facts posed by this case.
Counsel for American Druggists', in an exceptionally well written and well documented brief, points out that the computation used by the adjuster, in an effort to prorate the loss among the three insurers, has been designated as the "Pennsylvania Rule" which rationalizes that blanket policies (such as those issued in this case by Western and Zurich) do not constitute double insurance; therefore, there is no proration of the loss and the specific policy must bear the entire loss up to its face amount with the blanket policy or policies affording residual or excess coverage.[1]
Counsel for American Druggists' insists that the more equitable formula for proration emanates from the rationale appearing in the case of Cromie v. Kentucky & L. Mut. Ins. Co.[2]
In that case the rule was formulated that in such a factual situation as exists here the blanket policy or policies must first pay the loss on the property not covered by the specific policy and then contribute on a pro rata basis with the specific policy to pay the loss covered by both the general and the specific policy. In determining the pro rata liability of the blanket insurer, only the remainder of the blanket policy is brought into this calculation.[3]
Before we decide which rule should be adopted we must evaluate the validity of American Druggists' right to recover against the other two defendants. In the trial court, Western pleaded the exception of no cause of action in response to American Druggists' third party demand, and a similar exception was pleaded in this court by Zurich. The exceptions are predicated upon the contention that the only litigants possessing a cause of action to sue on the Western and Zurich policies are the insureds thereunder. In support of this argument Western and Zurich rely on the case of Fremin v. Collins,[4] which reasoned that in a case where each of two insurers contracted independently with the insured to provide coverage for damage caused by the negligence of an uninsured motorist, there resulted separate and distinct obligations and not solidarily liability pursuant to article 2091 of the Louisiana Civil Code. In that case, as in this one, the issue was whether an exception of no cause of action pleaded by one insurer against the third party demand of another insurer should have been maintained. The organ for the *813 court in the Fremin case reasoned as follows:
"The final vexatious question posed for our consideration is whether the defendant, Allstate Insurance Company, possesses the right to request contribution from Queens for one half the amount of any judgment rendered against it. The hypothesis upon which Allstate predicated the success of its third party petition against Queens is that this insurer is a solidary obligor with Allstate with respect to their obligation to the plaintiff.
"In support of this argument, counsel for Allstate points to the rationale of Civil Code Article 2091, which reads:
"`There is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor.'
Counsel therefore insists that since both Allstate and Queens were obligated to respond in damages in conformity with the uninsured motorist provisions of their respective contracts of insurance, they were obliged to do the same thing, so that each could be compelled to pay the entire amount. A cursory analysis of the codal article referred to above reveals that an obligation in solido is incurred when all creditors are obliged to do `the same thing so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor.'
"It is our opinion that the two insurance companies are not obliged to perform the same act. On the contrary, each is bound to do a separate and distinct thing under a separate and distinct agreement.
"Article 2077 of the Civil Code which appears in the general provisions of the code preceding the detailed rules on joint, several, and solidary obligations stipulates that when there are more than one obligor in the same contract, the obligation produced thereby may be joint, several, or solidary. Article 2078 more specifically provides that:
"`Several obligations are produced, when what is promised by one of the obligors, is not promised by the other, but each one promises separately for himself to do a distinct act; such obligations, although they may be contained in the same contract, are considered as much individual and distinct as if they had been in different contracts, and made at different times.'
"Moreover, Article 2084, dealing with several obligations, reads:
"`Several obligations, although created by one act, have no other effects than the same obligations would have had, if made by separate contracts; therefore they are governed by the rules which apply to all contracts in general.'
"An analysis of these codal articles convinces us that the contracts which form an integral part of this litigation were individually incurred by the respective insurance companies, and required separate performance in order to effect exoneration therefrom by each obligee.

"We are likewise convinced that the payment of $5,000.00 by one of the insurers herein to the insured under its contract of insurance would not in any way exonerate the other company from such payment under its respective policy. Moreover, Article 2093 expressly points out that an obligation in solido is not presumed, but that it must be expressly stipulated unless, of course, it is created by some provision of law.
"In this case, the facts hereof disclose that each insurer contracted independently with the insured to provide coverage for damage caused by the negligence of an uninsured motorist. They are separate *814 and distinct obligations and do not result in solidary liability between the obligors. On the contrary, the nature of the obligations could be a separate or a several liability under each insurance policy. Consequently, we are of the opinion that the lower court reasoned correctly in sustaining Queens' exception of no cause of action to the third party petition filed by Allstate." (Emphasis added)
Western and Zurich also argue that the rationale of Emmons v. Agricultural Insurance Company,[5] is not applicable to this case. In the Emmons case, the court reasoned that article 2103 of the Civil Code permitted an appeal by one joint tort feasor so as to bring all the defendants before the court in order that contribution might be enforced even though no appeal was prosecuted by the plaintiff and even though no third party petition was filed by the appellant. Western and Zurich insist, and we agree, that the Emmons case has no applicability to the matter now posed for our consideration since article 2103 applies to solidary obligations, and the liability of the three defendants herein is separate or several in nature.
In response to the foregoing argument, American Druggists' relies on the statutory pro rata clause, contained in each of the insurance policies involved herein in accordance with LSA-R.S. 22:691, which reads:
"This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not."
American Druggists' also relies on article 1111 of the Code of Civil Procedure, which provides that a "defendant * * * may bring in any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand." There is nothing in either of these statutory provisions which creates a cause of action for contribution among the defendants in this case. Article 1111 provides a procedural vehicle only for a defendant who has a cause of action against another litigant to enforce this cause of action in the same law suit. It is obvious that without the cause of action the procedural remedy is of no avail. Moreover, the statutory pro rata clause merely states that the company shall not be liable for a greater percentage of a loss than the proportion which its face value bears to the total amount of insurance coverage on the property damaged. This clause merely establishes a negative limitation of liability and does not set forth an affirmative right to obtain contribution from other companies having coverage on the damaged property.[6]
We therefore conclude that here, as in the Fremin case, the policies issued were distinct and separate contractual obligations between the respective insurers and the plaintiff. As such, they created only separate obligations and the liability of the insurers to the plaintiff was several in nature, thus obviating the chance for one insurer to obtain contribution against another by third party petition. We are, accordingly, confronted with a situation in which the insureds cannot enforce any remedy against Western and Zurich for the reason that they have failed to appeal from the judgment in favor of these two insurers and the judgment has now become final. Since American Druggists' has no cause of action against Western and Zurich, the *815 only remedy which American Druggists' could have preserved by its appeal was its right to recover any overpayment made by it to the plaintiff, Fasullo.[7]
To reiterate, American Druggists' filed a reconventional demand against the plaintiff endeavoring to recover $1,922.00, asserting that the $85,000.00 which it had paid prior to the suit was paid as the result of an error of law in the calculation of the pro rata amounts due by each of the three insurers involved. In support of its argument, it asserts that the lower court erred in not adopting the Cromie Rule, explained hereinabove, so that the two blanket insurers should first pay that part of the loss not covered by American Druggists' specific policy, and then contribute to the extent of the remainder thereof with American Druggists' on a pro rata basis to pay the portion of the loss covered by both the blanket and the specific policies.
However, after a careful review of the various alternative policy prorations, we are convinced that the proper formula to be used is that which has been commonly designated as the "Pennsylvania Rule," which provides that in a case such as the one now posed for our consideration the specific policy must bear the entire loss on the portion of the premises which it covers up to its face amount, with the blanket policy or policies affording residual or excess coverage to the extent of their respective limits of liability.[8]
The advantages of the "Pennsylvania Rule" are obvious. Initially, it is much simpler than the Cromie Rule to administer and will, in our opinion, result in far less litigation. In addition thereto, the rule is more equitable in that it tends to grant more coverage to the insured in a multicarrier situation. For example, if most of the loss had occurred to the least insured rear portion of the building and not in the more insured drugstore, it is quite possible that the plaintiff would not have been fully compensated for his losses if the Cromie Rule had been applied.
The litigants stipulated, and a research of the jurisprudence confirms this stipulation that no rule for proration of losses among insurers covering the same premises has been established in Louisiana. However, we are convinced that we should adopt the rationale emanating from the "Pennsylvania Rule." Under this rule American Druggists' as the specific insurer of the front portion of the premises only, is obliged to pay up to the limit of its liability, and under these circumstances its reconventional demand against the plaintiff is obviously unjustified.
For the foregoing reasons, the judgment of the trial court is now affirmed. All costs in the lower court are to be equally divided among the three defendants. All costs of this appeal are to be paid by American Druggists' Insurance Company.
Affirmed.
NOTES
[1] See Sloat v. Royal Ins. Co., 49 Pa. 14 (1865); Blue Anchor Overall Co. v. Penn. Lumbermens Mut. Ins. Co., 385 Pa. 394, 123 A.2d 413 (1956); Baltimore Fire Ins. Co. v. Loney, 20 Md. 20 (1863). See also 16 Couch on Insurance (2d) 507 Sec. 62:59.
[2] 54 Ky. 432, 15B Mon. 432 (1854).
[3] See also Ben-Hur Mfg. Co. v. Firemen's Ins. Co., 18 Wis.2d 259, 118 N.W.2d 159 (1962); Pearl Assur. Co. v. Hartford Fire Ins. Co., 239 Ala. 515, 195 So. 747 (1940) and other cases discussed in 169 A.L.R. 387 (1947) at p. 404 et seq.
[4] 194 So.2d 470 (La.App.1967).
[5] 245 La. 411, 158 So.2d 594 (1963).
[6] American Druggists' also urges the case of Childs v. Ins. Co. of Texas, 139 F. Supp. 637 (E.D.Ark.1956), which allowed a third party complaint for contribution by one insurer against another under a fleet policy. However, in that case the exact provisions of the pro rata clauses in the policies is not specifically defined, and it is impossible for us to consider the court's reasoning without a knowledge of the precise wording of the insurance policies involved.
[7] Judgment was rendered in favor of both Fasullo and J. P. Wholesale Drug Co., Inc., against American Druggists'. However, since American Druggists' only insured the property owned by Fasullo, the award in favor of J. P. Wholesale Drug Co., Inc., was an obvious clerical error and will be ignored in this court.
[8] See cases cited in note 1, supra.